**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LITRON, LLC<br><br>Plaintiff,<br><br>v.<br><br>AVERTIX MEDICAL, INC.<br><br>Defendant. | CIVIL ACTION<br>CASE NO. |

# COMPLAINT

Plaintiff Litron, LLC ("Litron" or "Plaintiff") hereby complains of defendant Avertix Medical, Inc. ("Avertix" or "Defendant"), as follows:

## Introduction and Parties

1. This is an action for breach of contract arising from Avertix's failure and refusal to remit payment for certain specially ordered merchandise manufactured by Litron for Avertix. As a result of Avertix's breaches of contract, Litron has incurred damages in excess of $484,154.90.

2. Litron is a domestic limited liability company organized and existing under the laws of the Commonwealth of Massachusetts with its principal place of business located at 207 Bowles Road, Agawam, Massachusetts 01001. Litron has no members domiciled in the State of New Jersey.

3. Avertix is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 40 Christopher Way, Suite 201, Eatontown, New Jersey 07724.

4. At all times material hereto, Avertix engaged in business in Massachusetts by and through its respective agents, employees, servants and representatives acting, or purporting to act, within the course and scope of their authority, agency duties, and/or employment.

**Jurisdiction and Venue**

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6. The parties to this law suit are citizens of different states, and the amount in controversy exceeds $75,000.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to this claim occurred in the District of Massachusetts and/or because the parties contractually agreed to venue of this Court.[1]

**Substantive Allegations**

8. Litron is a multi-faceted manufacturing facility specializing in laser welding, microwave packages, and hermetic sealing solutions.

9. Avertix is a provider of certain medical device systems.

10. For more than fifteen (15) years, Litron has provided manufacturing services for Avertix's products.

11. On or about February 26, 2025, Avertix issued purchase order number AM25-007 ("PO AM25-007") for 550 units identified as "ASSEMBLED IMD AMSG3-E – P16," 24 units identified as "IMD AMSG3-E, ENGINEERING SAMPLES – P16," 400 units identified as "CRIMPED MOTOR FOR ASSEMBLY," 550 units identified as "FLEX CIRCUIT

[1] The terms and conditions which govern the contract between Litron and Avertix provide that "The contract shall be construed in accordance with the laws and jurisdiction of the State of California, Washington, **Massachusetts**, Connecticut, Ohio, Kansas, Colorado" and that "Buyers hereby irrevocably submit to the exclusive jurisdiction and venue of the state courts or the U.S. District Court for the aforementioned state" for the "adjudication of any dispute arising from, based on, or in connection with the Contract." A true and correct copy of the Terms and Conditions is attached hereto as **Exhibit A**.

ASSEMBLY," and 400 units identified as "AMSG3-E SERIALIZED LID," for a total price of $1,132,128.96.[2]

12. On or about February 27, 2025, Litron issued a purchase order acknowledgement for PO AM25-007 (the "Acknowledgement").[3]

13. The Acknowledgement expressly provides that "Customer issuance of PO is confirmation that Litron Terms and Conditions of Sales are accepted."

14. Over the course of April 2025 to December 2025, Litron delivered and invoiced many orders to Avertix in fulfillment of PO AM25-007.

15. Each invoice provided for payment with thirty (30) days of issuance of same.

16. For most of the year, Avertix paid the invoice amounts in full, although payment was often made late.

17. Avertix's repeated payment on Litron's invoices further confirmed Avertix's assent to Litron's terms and conditions.

18. Later in 2025, however, Avertix stopped paying altogether.

19. The following invoices remain unpaid by Avertix:

| Invoice No. | Date of Invoice | Amount Due ($) |
|---|---|---|
| 94838 | 10/22/2025 | 7,808.95 |
| 94928 | 10/31/2025 | 45,291.91 |
| 94930 | 10/31/2025 | 46,853.70 |
| 94931 | 10/31/2025 | 43,730.12 |
| 95062 | 11/25/2025 | 46,853.70 |
| 95063 | 11/25/2025 | 35,921.17 |
| 95064 | 11/25/2025 | 42,168.33 |
| 95066 | 11/25/2025 | 46,853.70 |
| 95192 | 12/22/2025 | 15,617.90 |
| 95193 | 12/22/2025 | 10,932.53 |
| 95239 | 12/30/2025 | 48,415.49 |

---

2 A true and correct copy of PO AM25-007 is attached hereto as **Exhibit B**.
3 A true and correct copy of the Acknowledgement is attached hereto as **Exhibit C**.

| | | |
|---|---|---|
| 95240 | 12/30/2025 | 46,853.70 |
| 95241 | 12/30/2025 | 45,291.91 |
| 95242 | 12/30/2025 | 1,561.79 |
| | | **Unpaid Invoice Total** |
| | | $484,154.90 |

20. The total balance of unpaid invoices related to PO AM25-007 (the "Unpaid Invoices") is $484,154.90.

21. On or about January 14, 2026, Avertix announced its intention to terminate its longstanding manufacturing arrangement with Litron.

22. In addition to the amounts owed on the Unpaid Invoices, Litron has also incurred storage costs for unsold product, customer-provided equipment, and customer-furnished materials, which have remained in Litron's possession following the termination of the manufacturing arrangement between Litron and Avertix.

23. The estimated value of Avertix inventory on Litron's shelves is approximately $88,000.00.

24. Moreover, Litron also incurred value-added processing costs specifically in support of Avertix's manufacturing program.

25. Litron built manufacturing assemblies specifically for Avertix, using customer-supplied material, to support continuous production for Avertix.

26. This work was performed in good faith by Litron to support a continuity of supply, and Avertix benefited operationally from Litron's readiness and capacity to produce products consistently.

27. These custom assemblies remain on Litron's shelves.

28. The equipment produced for Avertix, like Avertix's inventory also sitting in Litron's storage, has little or no alternate commercial use to Litron.

29. Litron has offered to return all customer-specific equipment, materials, and inventory to Avertix in exchange for payment in full of the Unpaid Invoices.

30. To date, Avertix has refused to remit payment for the Unpaid Invoices or the manufacturing and storage services provided by Litron or to otherwise engage substantively in communications to resolve this matter.

## Count I
(Breach of Contract)

31. Litron incorporates by reference the allegations contained in paragraphs 1 through 30 as if set forth in full herein.

32. The acceptance of PO AM25-007 by Litron through the Acknowledgement constitutes a valid and enforceable contract.

33. The order placed by Avertix, and accepted by Litron, is governed by Litron's standard Terms and Conditions.

34. Litron manufactured and delivered the products ordered by Avertix in the PO AM25-007.

35. Avertix, however, failed and refused to remit payment for the products delivered in breach of the agreement between Litron and Avertix.

36. Due to Avertix refusal to remit payment or to substantively communicate with Litron about the same, Litron has retained certain products and materials on its shelves which belong to Avertix.

37. Litron has performed, and remains ready, willing, and able to perform the remainder of its obligations under the terms of the parties' agreement.

38. Litron sustained, and continues to sustain, damages as a result of Avertix's breaches of the parties' agreement.

39. Pursuant to PO AM25-007, the Acknowledgement, Litron's terms and conditions, and applicable law, there is due and owing by Avertix to Litron the aggregate sum of no less than $484,154.90, in addition to reimbursement of Litron's costs and expenses, including holding costs and attorneys' fees and costs[4] incurred to collect the outstanding amounts due and owing to Litron, service charges[5], and such prejudgment interest as allowed by law.

WHEREFORE, Plaintiff, Litron, LLC, demands judgment in its favor and against Defendant, Avertix Medical Inc., awarding damages to Litron in the amount of (a) no less than $484,154.90; (b) Litron's costs and expenses, including holding costs and attorneys' fees and costs incurred to collect the outstanding amounts due and owing to Litron; (c) services charges; (d) such prejudgment interest as allowed by law; and (d) all such other relief as the Court may deem appropriate and proper.

**Count II**
(Unjust Enrichment)

40. Litron incorporates by reference the allegations contained in paragraphs 1 through 39 as if set forth in full herein.

41. For several years preceding the Avertix's decision to use Litron's manufacturing services, Litron, at its own expense, provided to Avertix a measurable benefit for which Avertix has not compensated Litron.

---

[4] The terms and conditions provides for the recovery of attorneys' fees: "In the event that any third parties are employed to collect any outstanding monies owed to the Company by Buyer, Buyer agrees to pay to the Company reasonable collection costs, including attorney fees, whether or not litigation has commenced, and all costs of litigation incurred by the Company."

[5] The terms and conditions provide for the recovery of service charges: "Buyer agrees to pay for all purchases with the terms agreed (net 30 days unless otherwise specified) and agrees to pay a service charge of 1-1/2% per month (18% annual percentage rate) on all past due balances."

42. Litron has incurred value-added processing costs specifically in support of Avertix's manufacturing program.

43. Litron built manufacturing assemblies specifically for Avertix, using customer-supplied material, to support continuous production for Avertix.

44. This work was performed in good faith by Litron to support a continuity of supply, and Avertix benefited operationally from Litron's readiness and capacity to produce products consistently.

45. These custom assemblies remain on Litron's shelves.

46. Litron has incurred and continues to incur storage costs for customer-provided equipment, and customer-furnished materials, which have remained in Litron's possession following the termination of the manufacturing arrangement between Litron and Avertix.

47. In addition to the custom assemblies and raw materials, Litron has stored and continued to store unsold Avertix product, at Litron's own expense.

48. The estimated value of Avertix inventory on Litron's shelves is approximately $88,000.00.

49. The equipment produced for Avertix, like Avertix's inventory also sitting in Litron's storage, has little or no alternate commercial use to Litron.

50. Litron reasonably expected compensation from Avertix for the benefits it provided to Avertix through production and storage of specialized manufacturing assemblies and for the continued storage of Avertix products and materials.

51. Avertix was aware and had actual or chargeable knowledge that Litron expected compensation for provision of these benefits.

52. Litron has demanded that Avertix make restitution for these benefits, and Avertix has failed to do so.

53. Avertix has accepted and unjustly retained the benefits provided by Litron through the production and storage of specialized manufacturing assemblies and for the continued storage of Avertix products and materials.

54. Specifically, Avertix benefited operationally from Litron's readiness and capacity to produce Avertix products consistently.

55. Avertix also benefited from Litron's storage of Avertix's unsold products and unused materials at Litron's own expense.

56. Avertix has failed to compensate Litron for the reasonable value of the benefits Litron provided to Avertix.

57. The reasonable value of the benefits Litron provided to Avertix through production and storage of specialized manufacturing assemblies and for the continued storage of Avertix products and materials exceeds $100,000.00.

58. For all the reasons above, it is against equity and good conscience to permit Avertix to retain the benefits provided by Litron without compensating Litron for the reasonable value of those benefits.

WHEREFORE, Plaintiff, Litron, LLC, demands judgment in its favor and against Defendant, Avertix Medical, Inc., awarding damages to Litron in the amount of (a) no less than $100,000.00; (b) Litron's costs and expenses, including holding costs and attorneys' fees and costs, incurred to collect the outstanding amounts due and owing to Litron; (c) services charges; (d) such prejudgment interest as allowed by law; and (d) all such other relief as the Court may deem appropriate and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Litron, LLC respectfully hereby demands a trial by jury as to all matters so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**LITRON, LLC,**

By its attorney,

*/s/ Kelsey M. Westrich*

Kelsey M. Westrich (Bar No. 705615)
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
Telephone: (617) 723-3300
Facsimile: (857) 400-3375
Email: Kelsey.Westrich@saul.com

Dated: August 13, 2026